## IN THE UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

vs.                                        CASE NO.  11 CR 1032/PAE

MIGUEL STRONG, et. al.,

                Defendants

_____/


## DEFENDANT'S MOTION FOR A SEPARATE TRIAL AND OTER PRE-TRIAL MOTIONS

NOW COMES the defendant, MIGUEL STRONG, through counsel, and respectfully moves this Honorable Court to enter an Order granting his Motion for Severance of Trial and all of defendants' motions contained within.


## MOTION FOR A SEPARATE TRIAL

Mr. Strong seeks a severance  pursuant to Federal Rule of Criminal Procedure Rule 14(a).  In the context of severance, the Second Circuit has held:

> There is a preference, in the federal system, that defendants who have been indicted together be tried jointly. *See Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct 933, 936, 122 L.Ed.2d 317 (1993). The district court should grant a motion for severance "only if there is a serious risk that a joint trial would compromise a specific trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence. *United States v. Rosa,* 11 F.3d 315, 341 (2nd Cir.1993), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994).

*United States v. Miller,* 116 F.3d. 641 at 679 (2nd Cir. 1997).

For the reasons set forth below, the instant case presents a conflict between Mr. Strong's Sixth Amendment right of confrontation and his co-defendants' Fifth and Sixth Amendment right to the presumption of innocence and a fair trial. Further, it is anticipated that a joint trial will deprive Mr. Strong of a paramount constitutional right, that is, the right of confrontation under the Sixth Amendment.

Under *Zafiro,* granting severance remains an appropriate exercise of the Court's discretion, particularly when, as here, a significant fundamental constitutional right shall be abridged by a joint trial. The conflict between the constitutional rights of Mr. Strong and his co-defendants, even under a *Zafiro* analysis, requires severance. This case presents appropriate circumstances for the exercise of judicial discretion to grant a severance, as contemplated in *Zafiro.*

## I. Defendant Moves For An Order Pursuant To Fed. R. Crim. P. 14 To Sever His Trial From That Of His Co-defendants Based On Spillover Prejudice.

Mr. Strong moves for an order pursuant to Fed. R. Crim. P. 14 to sever his trial from that of his co-defendants based on spillover prejudice. Severance should be granted when it can be shown that a joint trial would prevent a reliable verdict. *Zafiro,* 506 U.S. at 539. The government seeks to try Mr. Strong with several of his co-defendants. A joint trial of the defendants will result in the offering into evidence of acts Mr. Strong was not jointly engaged in with his co-defendants, causing him unfair prejudice that cannot be mitigated. In light of this, if Mr. Strong is tried with his co-defendants, he will be adversely affected by the "spillover" effect of evidence offered against them.

Specifically, severance is warranted because Mr. Strong will undoubtedly suffer prejudice from the accumulation of evidence concerning his co- defendants' substantially more involved roles in other alleged offenses, including additional homicides, offenses that Mr. Strong was not a part of and had no knowledge of. Mr. Strong is not considered to be a major participant in the alleged conspiracy, his actual role in the various offenses are minute compared to those who have been much more active in the alleged conspiracy. *United States v. Kelly,* 349 F.2d 720, 759 (2nd Cir. 1965) (there was prejudice to a minor co-defendant from inexorable accumulation of evidence against leaders in the organization); and *United States v. Gallo,* 668 F. Supp. 736, 750 (E.D.N.Y. 1987) (where evidence against co-defendants is disproportionate, prejudicial spillover is enhanced).

Mr. Strong is facing conspiracy charges, therefore, any statement of a co-defendant -- other than a co-conspirator statement in furtherance -- could *not* be introduced at trial against him were he tried alone. *See United States v. Russo,* 302 F. 3d. 37, 46 (2nd Cir. 2002) (For a co-conspirator statement to be admissible, the defendant must be "jointly engaged with the declarant in a conspiracy seeking" the objective sought to be advanced by the speaker.). The *Russo* Court, discussing *United States v. Gigante,* 166 F.3d 75 (2nd Cir. 1999), noted *Gigante's* essential holding that offering statements under the coconspirator exception "was unacceptable when the speaker and the defendant were not jointly engaged in the criminal venture that was being advanced by the speaker." *Russo,* 302 F. 3d. at 44. The Court made the following additional observations regarding *Gigante:*

> The point of the observation in *Gigante* was that a declarant's statements made in furtherance of a criminal act – murder in that case – is not admissible against the defendant under the coconspirator exception unless the defendant was associated with the declarant in a conspiracy or joint venture *having that criminal act as its objective.* An association between the defendant and the declarant in some other venture ... will not suffice.

*Id.* (emphasis added). *See also United States v. Cervone,* 907 *F.2d 332, 342* (2nd Cir. 1990) (Severance may be required where "spillover might influence jury to attribute criminal intent to ambiguous conduct associating a particular defendant with a conspiracy.").

## II.    Defendant's Trial Should Be Severed From The Trial of His Co-Defendants Based On *Crawford.*

Mr. Strong moves for severance because there is a risk that statements by various co-defendants will be introduced at trial in violation of Mr. Strong's Sixth Amendment right to confrontation as enunciated in *Crawford.*   While the government has not yet provided any co-defendant statements to Mr. Strong, given the number of defendants in this case, it is likely that such statements will surface.   Because Mr. Strong and his defendants are all charged in Count One with the same crime, introduction of such statements at trial will present a problem warranting severance for the following reasons.

Rule 14(a) of the Federal Rules of Criminal Procedure provides:

> If the joinder of offenses or defendants in an indictment, information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

4

In *Crawford,* 541 U.S. at 67, the Supreme Court held, "While testimonial evidence is at issue, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." The *Crawford* Court defined "testimony" as "typically a solemn declaration or affirmation made *for the purpose of establishing or proving some fact." Id.* at 51-52 (internal quotations and citation omitted) (emphasis supplied).

At first blush, it may appear that co-defendant statements that have been *Bruton-ized* or otherwise do not directly inculpate a defendant are acceptable under *Crawford.* To be sure, addressing the issue in the context of conspiracy, Judge Glasser stated in *United States v. Stone,* 2007 WL456059, *2 (E.D.N.Y. Dec. 17, 2007), quoting the Second Circuit's decision in *United States v. Lung Fong Chen,* 393 F.3d 139, 150 (2nd Cir. 2004):

> [W]hether a statement that passes muster pursuant to *Bruton* and *Richardson* must also pass muster pursuant to *Crawford* was precisely answered in *[Lung Fong Chen],* where the court held that a co-defendant's statement that encountered no *Bruton* error also encountered no *Crawford* error stating 'we see no indication that *Crawford* overrules *Richardson* or expands the holding of *Bruton.* We therefore do not find that the admission of any of Tu 's statements violated the Confrontation Clause.'

Since the Second Circuit decided Lung *Fong Chen,* however, *Crawford's* implications have come to light and changed the legal landscape. Three post-*Crawford* cases in which the Second Circuit proscribes the use of co-defendant statements to prove the existence of a conspiracy illustrate these changes as applicable here. Those cases are: *United States v. Santos,* 449 F.3d 93, 100 (2nd Cir. 2006); *United States v. Riggi,* 541 F.3d 94, 104-05 (2nd Cir. 2008); and *United States v. Becker,* 502 F.3d 122 (2nd Cir.

2007).  In *Santos,* 449 F.3d at 100, the Second Circuit held that use of a jointly tried co-defendant's statement to prove the existence of a conspiracy charged against all defendants at trial is *Crawford* error.  More recently, in *Riggi* and *Becker,* the Second Circuit held that the admission of detailed plea allocutions of non-testifying co-defendants to prove existence of conspiracies is likewise error under *Crawford. See Riggi,* 541 F.3d at 104-05 (error was plain); *Becker,* 502 F.3d 122 (error was not harmless).

     *Santos* is particularly illustrative of the *Crawford* principles relevant here. In that case, four defendants were convicted by a jury of conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951, which requires "actual or threatened force, or violence, or fear of injury to sustain a conviction, *id.* at (a)- (b). *Santos,* 449 F.3d at 94. At the trial, which was prior to *Crawford,* the district court allowed into evidence the statement of one co-defendant K. Rodriguez admitting there was a conspiracy to rob individuals in a drug deal, directing the jury not to consider the statement as to any other co-defendant's participation in the conspiracy.  *Id.* at 97, 95 (see *supra).*

     On appeal the government conceded that K. Rodriguez's statement was inadmissible under *Crawford,* and the appellants argued that admission of the statement was not harmless because their plan was to "steal *by trick* (impersonation of DEA agents), rather than by *force." Id.* at 95 (emphasis in original).  Reasoning that the corpus of the evidence absent the statement did not sufficiently establish the force element, the Circuit reversed the conviction of one appellant, Edgardo Vazquez Baez, because evidence at most only established his "mere presence" at the scene of the underlying

6

incident, and remanded for a new trial for the others, Angel Rodriguez and Faustino Delarosa, whose participation in the conspiracy the jury could reasonably find based on evidence other than Rodriguez's statement. *Id.* at 99-105.

In other words, the *Crawford* problem was inherent in the use of K. Rodriguez's statement to prove the scope of the conspiracy. Indeed, analyzing the impact of K. Rodriguez's statement to the jury's determination of Vazquez Baez's guilt, the Circuit stated: "[R]easonable jurors, who had not considered K. Rodriguez's statement that there was a conspiracy to r<u>ob</u>, may have found that *'the essential nature of the plan'* did <u>*not*</u> involve force, a threat of force, or fear of injury." *Id.* at 100 (underlined emphasis in original; other emphasis supplied).

The defendant is mindful that courts are accustomed to viewing Sixth Amendment right-to-confrontation issues through the lens of *Bruton.* However, the continued wisdom of this approach is questionable in a *post-Crawford* legal landscape over four decades subsequent to the holding in *Bruton* -- which was decided without the Sixth Amendment analysis *Crawford* requires. Sixth Amendment concerns under *Crawford* jurisprudence become all the more troubling when, as here, in order to be relevant, the co-defendant statements will necessarily intertwine with the nature and scope of conduct with which all the defendants are charged.

In such an instance, efforts to inoculate against the error may not suffice: while courts ordinarily presume juries to follow limiting instructions, it is inappropriate to do so "'when the prejudicial spillover [i]s so overwhelming, they cannot be presumed to be effective.'" *Riggi,* 541 F.3d at 103 (quoting *United States v. McDermott,* 245 F.3d 133,

140 (2nd Cir. 2001). Thus, while it is not yet clear whether or why the Government may seek to introduce certain evidence, a potential *Crawford* problem posed by such evidence weighs in favor of severance. *See United States v. Basciano,* 2007 WL 3124622, *7 (E.D.N.Y. October 23, 2007) (Garaufis J.).

To reiterate, it is anticipated that the government will seek to introduce co-defendant statements at trial. It is also anticipated that the government's theory of admissibility will necessarily be that any such statement is relevant as tending to prove the guilt of the individual who made the statement, that is, as tending to prove that individual's participation in the conspiracy. Regardless of any limiting instruction, since all the co-defendants charged with Mr. Strong in Count One are charged with the same conspiracy, any co-defendant statement the government seeks to introduce at trial will inextricably intertwine with the charges against Mr. Strong. This risk threatens Mr. Strong's Sixth Amendment right to confrontation, thus warranting severance.

With the permission of the Court, Mr. Strong respectfully reserves the right to amend this argument in light of subsequent disclosure by the government.

## DISCLOSURE OF STATEMENTS OF INTERVIEWED INDIVIDUALS

Mr. Strong moves, in accordance with the Supreme Court decision *Kyles v. Whitley,* 514 U.S. 419 (1995), for the production of [1] any contradictory or inconsistent statements made to any law enforcement personnel/prosecutors by any individual regardless of whether the government intends to call any such individual in its direct case; and [2] any evidence that would tend to inculpate someone other than Mr. Strong as he is charged in Count One of the Indictment; and [3] any evidence which is

inconsistent with the government's theory of the case, as set forth in its indictment, as it pertains to the role or activity of Mr. Strong.

In light of the significant reliance by the Government on information provided by cooperating witnesses, the government's case against Mr. Strong is anticipated to comprise testimony by at least one of them -- or another confidential source. Any statement by such an individual falling within the ambit of *Kyles* must be disclosed. The *Kyles* decision involved a New Orleans, Louisiana homicide prosecution, where the police withheld from the prosecutor inconsistent statements of its witnesses and other evidence tending to implicate another individual. When the defense filed a detailed pre-trial motion for the disclosure of *Brady* material, the prosecution filed the routine "boiler plate" response that no exculpatory evidence existed.  After a jury was unable to reach a verdict in the first trial, the defendant was convicted on re-trial and was sentenced to death. It was during the post-judgment proceedings that the defendant Kyles discovered the existence of overwhelming exculpatory evidence in the police files. *Kyles, supra.*

The United States Supreme Court determined that a *Brady* violation existed when the Louisiana state prosecutor suppressed a series of inconsistent and contradictory statements made by its main informant and other civilian eyewitnesses concerning physical evidence seized and the identification of the defendant as a participant. *Kyles, supra.* Although Kyles reflects a fact-based analysis of whether these was, in fact, a "reasonable probability" that the suppressed statements would have lead to a different result, the Court took the opportunity to address the

prosecutor's affirmative obligations under Brady.

Louisiana argued that it should not be held accountable under both *Bagley* and *Brady* for evidence known "only" to the police investigators and not known to the prosecutor. Writing for the Court, Justice Souter specifically rejected this narrow view of prosecutorial responsibility:

> [A]ny argument for excusing a prosecutor from disclosing what he does not happen to know about boils down to a plea to substitute the police for the prosecutor, and even for the courts themselves, as the final arbiters of the government's obligation to ensure a fair trial.

*Kyles,* 514 U.S. at 438.

The Court determined that the prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police. *Id.* at 437. Citing *Giglio v. United States,* 405 U.S. 150, 154 (1972), Justice Souter recognized that procedures and regulations can be established to insure the communication of exculpatory evidence between police investigator and prosecutor, so that the prosecution can meet its *Brady* obligations. *Id.* at 438. Therefore, the prosecution has an affirmative duty to specifically inquire of each investigating officer whether he or she is aware of any exculpatory information. *Id.* at 437. And, the "prudent prosecutor will resolve doubtful questions in favor of disclosure." *Id.* at 439 (quoting *United States v. Agurs,* 427 U.S. 97, 108 (1976)).

Accordingly, the defendant requests production of any inconsistent statement of any cooperator, witness and/or other evidence that might raise questions concerning the thoroughness or good faith of the investigation or that might contradict or

undermine its theory of the case.

### Disclosure of evidence pertaining to the credibility of informants & cooperating witnesses.

The defendant requests production of any inconsistent statement of any confidential informant/cooperator or other evidence that might raise questions concerning the reliability or integrity of any confidential informant/cooperator or former cooperator. *Giglio v. United States,* 405 U.S. 150, 154 (1972). As stated above, it is likely that the testimony of a confidential informant or cooperating witness is essential to the government's case. The credibility of any such witness will impact the jury's verdict. The United States Supreme Court has long held that a defendant has a Fifth Amendment due process right to any evidence that may be used to challenge the credibility of such witnesses. *Giglio, supra.*

The request for *Giglio* material is distinguished from the request made pursuant to *Kyles.* While both *Kyles* material and *Giglio* material are discoverable under *Brady v. Maryland,* 427 U.S. 83 (1963), they are conceptually distinct. As a preliminary matter, in *Brady,* the Supreme Court affirmed the reversal of a state court homicide conviction because the prosecution, despite the defendant's attorney's request to produce statements, withheld a co-defendant's statement that the co-defendant, not the defendant, had actually killed the victim:

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Brady,* 427 U.S. at 87.

Under *Brady* and its progeny, the government has an affirmative duty to disclose favorable evidence, even when there has been no specific disclosure request by the defense. *United States v. Bagley,* 473 U.S. 667, 678 (1985); *United States v. Payne,* 63 F.3d 1200, 1208 (2nd Cir. 1995).   This rule encompasses both exculpatory and impeachment evidence. *Wood v. Bartholomew,* 516 U.S. 1 (1995).

In *Kyles, supra,* the Supreme Court held that a *Brady* violation exists when the prosecution fails to furnish the defense with inconsistent and contradictory statements of an informant which have a unreasonable probability to impact the juries consideration of the *charged conduct.* In *Giglio,* the Supreme Court held that when the reliability of a witness is central to the case, evidence affecting the credibility of that witness constitutes *Brady* material.   *Giglio, supra.*

The government often asserts that a defendant is not entitled to any materials requested to be disclosed pursuant to *Kyles.* Frequently, the government argues that the materials specifically requested by the defendant pursuant to *Kyles* are not discoverable upon request because those materials constitute either *Giglio* or 3500 material.   While the requested materials may be either *Giglio* or 3500 material the requested materials are also *Kyles* materials. The fact that the requested materials may be categorized as both *Kyles* and/or *Giglio* or 3500 materials does not determine the timing of disclosure.   The government cannot legitimately argue that the defendant is not entitled to the specific *Kyles* materials the defendant requested because those materials may also be categorized as either *Giglio* and/or 3500 materials.   The United States Supreme Court in *Kyles* did not render its decision so

that the very discovery requirements set forth in that decision are somehow rendered inapplicable by the fact the materials are also *Giglio* or 3500 materials.

Indeed, in making its decision in *Kyles,* the Supreme Court was well aware of the pre-existent requirements for timeliness of discovery materials that fall under *Giglio* or 3500. To make the materials contemplated in *Kyles* subject to any other disclosure requirements would eviscerate the decision. Due process considerations, which are the foundation of the decision in *Kyles,* mandate the materials requested by the defendant be turned over to the defendant as promptly as possible to permit the defendant to adequately prepare his defense.

The defendant, mindful of the clear tenets of the court's holding in *Kyles,* makes specific requests for only the materials to which the Supreme Court in *Kyles* determined a defendant is entitled. It is respectfully requested that the court order the government to immediately disclose to the defendant: [1] any contradictory or inconsistent statements made to any law enforcement personnel/prosecutor by any individual, regardless of whether the government intends to call such an individual in its direct case; and [2] any evidence that would tend to inculpate someone other than M i g u e l  S t r o n g in the conduct with which he is charged; and [3] any evidence which is inconsistent with the theory of the government's case, as set forth in the indictment, or as it pertains to the role or activity of Mr. Strong.

As discussed above, the principle sources of information about the conspiracy a r e cooperating witnesses. Inconsistencies and ambiguities among these individuals warrants further discussion in the context of defendant's *Kyles* demand.

13

Because the information provided by the various informants/confidential witnesses is internally inconsistent and maybe contradictory to the government's theory of the case, it is squarely within the ambit of the materials the Supreme Court held must be turned over to the defendant. The Supreme Court did not say that the material should be turned over later; rather, the opinion deems such material essential to the preparation of the defense.

Accordingly, the statements of the various confidential witnesses and the statements of any other individual that contravenes any confidential witness, should be immediately turned over to the defendant.

### EVIDENCE OF UNCHARGED CRIMES OR OTHIS BAD ACTS

Mr. Strong moves pursuant to Federal Rule of Evidence 404(b) to preclude the government from offering at his trial evidence of uncharged crimes, or, in the alternative, requests an order, pursuant to Fed. Rule of Crim. Proc. 16(a)(1)( c), directing the government to disclose any and all acts which the government would seek to introduce against the defendant pursuant to Federal Rule of Evidence 404(b) in such sufficient and reasonable time that the defendant may make a motion to preclude the introduction of such evidence.

As explained below, this evidence is discoverable under Rule 16 because (a) it is "material to the preparation of the defense," and (b) much of it constitutes evidence that the government intends to introduce as "evidence in chief."

A defendant in a criminal case must be afforded "a fair opportunity to meet the critical and damaging proof of an offense not presented against him in the indictment."

*United States v. Baum,* 482 F.2d 1325, 1332 (2nd Cir. 1973).   This is so a defendant may seek pre-trial rulings to bar the admission of such evidence and at the same time also prepare to meet any such evidence ruled admissible after the pre-trial rulings.  Indeed, in *Baum,* the Second Circuit reversed a conviction where the government failed to give adequate notice of other crimes evidence:

> Confronted for the first time with the accusation of prior criminal conduct and the identity of the accuser, the defendant had little or no opportunity to meet the impact of this attack in the midst of the trial.  This precarious predicament was precipitated by the prosecutor.

*Baum,* 482 at 1331.

Further, in *United States v. Davidoffi* 845 F.2d 1151 (2nd Cir. 1988), the Second Circuit reversed a RICO conviction where the government had offered proof of racketeering activity that it had refused to identify in a bill of particulars:

> We do not mean to imply that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute.  But hise it is simply unrealistic to think that a defendant preparing to meet charges of extorting funds from one company had a fair opportunity to defend against allegations of extortion against unrelated companies, allegations not made prior to trial

*Id.* at 1154.

Here, the defendant is presented with a situation somewhat similar to the defendant in *Davidoff.*  The conspiracy charged in the indictment spans from 2003 up until 2011, and it would be both unfair and "unrealistic to expect the defendant to defend against any other allegation of which he has no notice.

In the Second Circuit, evidence of uncharged crimes is admissible as long as it is relevant to some disputed issue in the trial and does not show a propensity for criminality on the part of the defendant. *United States v. Brennan,* 798 F.2d 581 (2nd Cir. 1986).

In *Huddleston v. United States,* 485 U.S. 681 (1988), the United States Supreme Court overruled the Second Circuit's then established rule that similar act evidence could be admitted only where the government established the existence of that act by a preponderance of the evidence. Under *Huddleston,* the government needs only present evidence that would allow the juries to "reasonably conclude" that the defendant committed the act. *Id.* In light of *Huddleston's* relaxation of the government's burden, pretrial disclosure of similar act evidence is therefore all the more "material" to the preparation of the defense.

While the Supreme Court ruled in *Huddleston* that the District Court was not required to determine that an uncharged crime or act was proved by a preponderance of the evidence before admitting it, the Court established a four- pronged test which must be satisfied before evidence of uncharged crimes is admitted. The evidence sought to be admitted must: (1) be offered for a proper purpose as defined in Federal Rule of Evidence 404(b); (2) satisfy Federal Rule of Evidence 402 as enforced by Federal Rule of Evidence 104(b); and (3) satisfy Federal Rule of Evidence 403 as to the probative value of the evidence outweighing its prejudicial impact. In addition, (4) pursuant to Federal Rule of Evidence 105, a limiting instruction can be given by the court which would properly guide the jury in the manner in which the evidence sought to introduced is to

be used. *Huddleston, supra.* Further, in *United States v. Gilan,* 967 F.2d 772 (2nd Cir. 1992), the Second Circuit ruled that evidence of an uncharged crime could not be admitted unless the jury could reasonably believe the act occurred and the defendant was the actor.

Here the applicable trial issue is whether or not the defendant was part of a racketeering conspiracy; specifically, the issue is whether the defendant participated in the conduct and affairs of that conspiracy. Upon information and belief several cooperators and other individuals have proffered information to the government concerning the conspiracy or the defendant. Some of this information resulted in conduct which is set forth against the defendant in the indictment. However, upon information and belief, the government has obtained information pertaining to prior uncharged acts of the defendant, from various sources including but not limited to confidential informants and cooperators, which it has yet to disclose.

Accordingly, the defendant moves for an order, pursuant to Fed. Rule of Crim. Proc. 16 (a)(1)( c), directing the government to disclose any and all acts which the government would seek to introduce against the defendant pursuant to Federal Rule of Evidence 404(b) in such sufficient and reasonable time that the defendant may make a 404(b) motion to preclude the introduction of such evidence.

## THE COURT SHOULD ORDER
### *BRADY* DISCLOSURE

The government has notified counsel that it acknowledges "its obligations under *Brady* v. *Maryland,* 373 U.S. 83 (1963), and its progeny." At that time, the government

stated that it was unaware of any *Brady* materials, and would provide to counsel any such materials should they come to light.  To date, however, the government has failed to provide any such materials.  Accordingly, defendant respectfully requests that this Court direct the government to disclose to the defendant all information which is arguable within the scope of *Brady.*  In any instance in which the government harbors any doubt as to whether something should be disclosed or not, the prosecution should be directed to present such information *ex parte, in camera,* to this Court so that an independent decision can be made.  More over defendant respectfully request that this Court direct the government to produce such material as would be required under *Brady* and its progeny which is in the possession, custody or control of any sister law enforcement agency that jointly participated in the investigations which led to this Indictment.

**A.     This Court Should Direct the Government to Disclose, At this Time, all *Brady* material which requires preparation by defendant to obtain its full efficacy**

In *Brady,* the Supreme Court held that due process required that the government produce all "exculpatory" evidence, which included both "[m]aterials ... that go to the heart of the defendant's guilt or innocence and materials that might affect the jury's judgment of the credibility of a crucial prosecution witness:' *United States v. Hill, 976* F.2d 132, 134-35 (3rd Cir. 1992). See *Giglio v . United States,* 405 U.S. 150. 154, 92 S Ct. 763, 766, 31 L.Ed.2d 104 (1972); *United States v. Perdomo,* 929 F.2d 967, 970 (3rd Cir.1991).

It is requested that this exculpatory evidence, which includes material that the defense might use to impeach a critical government witness, must be turned over sufficiently in advance of trial to allow "for full exploration and exploitation by the defense." See e.g. *Grant* v. Alldredge, 498 F.2d 376, 382 (2nd Cir. 1974). Such early

disclosure follows from the principle that [o]rdinarily it is disclosure rather than suppression, that promotes the proper administration of criminal justice." *United States* v. *Baum,* 482 F.2d 1325, 1331 (2nd Cir. 1973).

In *United States v. Green,* 144 F.R.D. 631 (W.D.N.Y. 1992), that court had occasion to consider the issue of pretrial disclosure of *Brady* material where the government offered to disclose *Brady* material one week prior to trial. The court concluded that this proposal not only failed to satisfy the government's obligations, but more importantly, failed to insure that the defendant would be able to effectively utilize any material disclosed.

After surveying the relevant case law, the Court concluded that the resolution of requests for pretrial disclosure of *Brady* material requires a balancing of several factors. The court acknowledged that, at least in the abstract, unnecessary pretrial disclosure could lead to such potential problems such as witness tampering, bribery or the manufacturing of defense evidence. On the other hand, the court recognized that if the principles underlying *Brady* were to have any real meaning, in instances which the information was of such a nature that pretrial preparation would be required to insure meaningful use by the defense, pretrial disclosure of *Brady* should be ordered.

The court turned to the decision in *United States v. Pollack,* 534 F.2d 964 (D.C Cir.), *cert. denied,* 429 U.S. 924 (1976); for the rationale that it ultimately applied in resolving the *Brady* issue. The decision in *Pollack,* although a Fifth Circuit, was written by Judge Lombard of the Second Circuit. As Judge Lombard explained in *Pollack:*

> Disclosure by the government must be made at such a time
> as to allow 1he defense to use the favorable material
> effectively in the preparation and presentation of its case,

19

> even if satisfaction of these criteria requires pre-trial
> disclosure (citations omitted). The trial judge must be
> given a wide measure of discretion to insure satisfaction of
> this standard. While some courts have held that *Brady*
> affords no pretrial discovery rights to the defendant
> (citations omitted) we believe that the application of a strict
> rule in this area would inevitably produce some situations
> in which late disclosure would emasculate the effects of
> *Brady* or other situations in which premature disclosure
> would necessarily encourage those dangers that militate
> against extensive discovery in criminal cases...courts can
> do little more in determining the proper timing for
> disclosure than balance in each case the potential dangers
> of early discovery against the need that *Brady* purports to
> serve of avoiding wrongful convictions.

*Id* at 973-74.

Other Courts, on many occasions, have reached the same conclusion as the courts

in *Pollack* and Gr*een.* In U*nited States* v. *Mitchell,* 372 F.Supp. 1239, 1257 (S,D.N.Y.

*1973), qppeal dismissed and mandamus denied sub. nom.. Slam* y. *Gagliardi,* 485 F.2d

'1290 (2nd Cir. 1913), the court rejected the blanket assertion "that *Brady* imposes no

pretrial obligation on...the government"" holding instead that;

> the due process implications of *Brady* [obligate] the
> government to disclose exculpatory information as soon <u>as
> the character of such information is recognized.</u> This
> obligation has no chronological boundaries, but applies
> equally to the pretrial trial and post-trial stages of a proceeding.

*Id.* at 1251 (emphasis in original).

Similarly, in *United States v. Deutsch,* 373 F.Supp. 289,291 (S.D.N.Y. 1974),

Judge Grankel ordered the prosecutor to permit discovery and inspection of all

exculpatory material as "promptly as reasonably possible." The court stressed:

> it should be obvious to anyone involved with criminal
> trials that exculpatory formation may come too late<sub>t</sub> if it

> is given only at trial, and that the effective implementation of
> *Brady v. Maryland* must, therefore, <u>require early
>  Production in at least some situation</u>

*Id.* At 290 (emphasis added).

The court in *United States* v. *Crozzoli,* 698 F.Supp. 430, 436-37 (E.D.N.Y. 1988), which dealt with impeachment material constituting agreements between the government and civilian witnesses, held that *Brady* requires timely pretrial disclosure of all exculpatory information stating:

> Surely, such a dilution of *Brady* [I.e. a reading of *Brady* as
> <u>not</u> Imposing pretrial  disclosure obligations] is not
>  warranted by a literal reading of that decision, viz:
>
> We now hold that the suppression by the prosecution of
> evidence favorable to an accused upon request violated due
> process where the evidence is material either to guilt or to
> punishment, irrespective of the good faith or bad faith of
> the prosecution.
>
> 373 U.S. at 87, 83 S.Ct. at 1996 (emphasis added). To
> permit the prosecution to withhold exculpatory
> evidence despite a request until such time as the
> prosecutor chooses to disclose it, is to permit the
> prosecutor to control, to some extent, the preparation of
> a defense.

*Id* At 436-37 (emphasis added).

The court in *Crozzoli,* fol1owing the decisions in *United States v. Mitchell, supra,* and *United States v. Goldman, infra,* ordered the government to "disclose to the defendant such evidence as it is obligated to disclose by *Brady." ld* at 437. *See United States v. Goldman,* 439 F.Supp. 337, 349 (S.D.N.Y. 1977) (if exculpatory evidence is produced for the first time at trial, defendant may not have an adequate opportunity to effectively utilize the material, particularly if it points to the existence of other evidence helpful to the

defendant'); *United States v. Shoher, 555* F.Supp. 346,352 (S.D.N.Y 1983), *quoting*

*Deutsch,* 373 F.Supp. at 289, (evidence in the government's possession favorable to the

defendant, including evidence pertaining to the credibility of government witnesses,

should be disclosed fur enough in advance of trial to allow for effective "evaluation,

preparation and presentation at trial"); *United States* v. *Jones,* No. 85 Cr. 1075 (GSH),

1986 WL 275 (S.D.N.Y. May 28, 1986) (government ordered to produce *Brady* materials,

including impeachment, immediately, so that defendant "may have adequate time to

evaluate and utilize the information in preparing their defenses') *United States* v. *DePeri,*

778 F.2d 963, 983 (3rd Cir. 1985) *cert.denied,*475 U.S. 1110 (1986).

**B.** **the government should be compelled to provide all *brady* material, including impeachment material of government witnesses**

Federal prosecutors routinely ignore the *Brady/Bagley* mandate by their contention

that any material falling under the category of "impeachment," whatever its exculpatory

value, need not be disclosed until after the witnesses testify. In so arguing, they mistakenly

contend that the *Jencks* Act, 18 U.S.C. § 3500, somehow supersedes the defendant's Sixth

Amendment rights guaranteed by *Brady.*

There can be no serious dispute over the proposition that *Brady* encompasses

material that "might well alter the jury's judgment of the credibility of a significant

prosecution witness." *Giglio* v. *United States,* 405 U.S. 150, 154 (1972); *United States v.*

*Vella,* 562 F.2d 275 (3rd Cir. 1977)(per curiam) ("The rough interview notes of F.B.I.

agents should be kept and produced so that the trial court can determine whether the notes

should be made available to the [defendant] under the rule of *Brady... ")*; *United States v.*

*Ammar,* 714 F.2d 238, 259 (3rd Cir. 1983) (extending rule to require preservation of rough

drafts of agents' reports); *United States* v. *Chitty,* 760 F.2d 425,428 (2ⁿᵈ Cir. 1985), *cert.*

*denied,* 474 U.S. 945 (1985) ("'The *Brady* rule applies equally to impeachment and

exculpatory evidence"). Thus, in *United States* v. Bagley 473 U.S. 667 (1985), the

Supreme Court stated:

> "Impeachment evidence..as well as exculpatory evidence,
> calls within the *Brady* rule. *See Giglio v. United States,*
> 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 .L.Ed.2d 104
> (1972). Such evidence is 'evidence favorable to an
> accused,' *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196, so that, if
> disclosed and used effectively, it may make the difference
> between conviction and acquittal. *Cf. Napue v. Illinois,*
> 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3L.Ed.2d 1217
> (1959) ("The jury's estimate of the truthfulness and
> reliability of a given witness may well be determinative of
> guilt or innocence, and it is upon such subtle factors as the
> possible interest of the witness in testifying falsely that a
> defendant's life or liberty may depend").
>
> The Court of Appeals treated impeachment evidence as
> constitutionally different from exculpatory evidence...This
> court has rejected any such distinction between
> impeachment evidence and exculpatory evidence."

*Id. at* 676. *See also Kyles v.Whitley,* 514 U.S. 419, 433 (1995) ("In *United States* v,

*Bagley* the Court disavowed any difference between exculpatory and impeachment

evidence fur Brady purposes..."). Nevertheless, the government would set up its own

artificial distinction claiming that only substantively exculpatory evidence in covered by

*Brady,* and impeachment materials are governed solely by the *Jencks* Act. That the

government may not hide behind the Jencks Act to prevent pretrial disclosure of material

covered by both *Jencks* and *Brady,* however, is made clear in the opinion of the court in

*United States v. Gallo,* 654 F.Supp. 463 (E.D.N.Y.), *mandamus granted on other grounds.*

*sub. nom.; In re United States,* 834 F.2d 283 (2ⁿᵈ Cir. 1987). The court relied upon the

concurring of Justice Brennan in United States v. Palermo, 360 U.S. *343,365-56, reh'g*

*denied,* 361 U.S. 855 (1959), discussing 18 U.S.C. § 3500:

> "There inheres in an over rigid interpretation and
> application of the statute [18 U.S.C. § 3500] the hazard of
> encouraging a practice of government agents' taking
> statements in a fashion calculate to insulate them from
> production."

*Gallo, supra,* 654 FSupp-at 474. The court also stated:

> "Such an over rigid reading of § 3500 (a) would lead to the
> conclusion that pretrial discovery is never permissible for
> any material contained in the statements of prospective
> witnesses, even if there are alternative bases for such
> discovery. But that interpretation has never been accepted.
> For instance, compliance with the *Jencks Act* discovery
> schedule does not necessarily satisfy the due process
> requirements for *Brady* material<u>...If witness' statements
> contain material exculpatory to the defendant, due process
> requires pretrial production under Brady despite the fact
> that it may be *Jencks* material as well.</u>"

*Id.* (emphasis added, citations omitted).

Similarly, in *United States v. Starusk,* 729 F.2d 256 (3rd Cir. 1984); the

prosecutor had in his possession three FBI 302 reports based on interviews with critical

government witness) containing inconsistent statements. The government made two

reports available the week before trial. The other report only came into defendant's

possession through a third party a few days prior to trial. The government contended

that because the reports were impeachment material, they were governed by the *Jencks*

Act, and not subject to pretrial disclosure.

First, the court made clear that impeachment material is covered by *Brady:*

> "We, have no doubt that the second F.B.T. report qualifies as
> Brady material. Patrick Logan, the alleged source of the
> statements contained in the reports, is critical to the

24

> government's case. As a key prosecution witness, his
> credibility may well be determinative of guilt or
> innocence...Thus, evidence that could be used to impeach
> Logan's credibility, would clearly be exculpatory."

*1d.* at 260 (citations omitted). The court further noted that, because the report contained

the "F.B.I interpretation" of the witness' statement, it was not covered by the *Jencks* Act.

*ld.* at 263.

Most importantly, the court, in discussing the interplay between the Jencks Act

and *Brady,* pointed out that, even if the report could qualify as *Jencks* material *Brady*

would nonetheless require its turnover in advance of trial. Thus, the court stated:

> Even if the report contained statements by Logan that could
> be classified properly as Jencks Act material, that does not
> mean that it would be exempted nom a pretrial disclosure
> order based on *Brady.* All *Jencks Act* statements are not
> necessarily *Brady* material. The *Jencks Act* requires that
> any statement in the possession of the government-
> exculpatory or not -that is made by a government witness
> must be produced by the government during trial at a time
> specified by statute. *Brady* material  is not limited to
> statements of witnesses but is defined as exculpatory
> material; the precise time within which the government
> must produce such material is not limited by specific
> statutory language but is governed by existing case law.
> Definitions of the two types of investigatory reports differ,
> the timing of production differs, and compliance with the
> statutory requirements of the *Jencks Act* does not
> necessarily satisfy the due 'process concerns of *Brady*
> (citations omitted).

*Id.* (emphasis in original). *See also United States v. Poindexter,* 727 F.Supp. 1470, 1485

(O.D.C. 1989) *("'Brady* imposes duties on the prosecution in addition to those created by

the *Jencks a*ct, and...in some cases the same evidence may be subject to both obligations").

Accordingly, defendant respectfully request that any *Brady* material, including

impeachment material in the possession, custody or control of this prosecutorial agency  or any sister law enforcement agency that jointly participated in the relevant underlying investigations, be disclosed to defense counsel forty-five (45) days prior to trial.

## RULE 16 REQUEST

The defendant is entitled to the following materials pursuant to Rule 16 of the Fed. R. Crim. Pro. because they are material to the defense:

[a]  Any and all recorded conversations between any confidential informant/ witness, including but not limited to conversations with Mr. Strong; and

[b]  Any and all FBI or other is law enforcement reports concerning CW's interactions with Mr. Strong.

## MISCELLANEOUS REQUESTS

Mr. Strong requests the permission of the Court to make further and other motions as the facts of the case may require.

## CONCLUSION

For all the reasons stated above, this court should GRANT Mr. Strong's motion for servance; for disclosure of statements consistent with  *Kyles v. Whitley;* for notice of 404(b) evidence; and for all other relief requested.

Dated:  New York, New York
        July 14, 2014

Respectfully submitted,

/S/ Kafahni Nkrumah
KAFAHNI NKRUMAH, Esq.
JOSHUA DRATEL, Esq.
Counsel for Mr. Strong

KAFAHNI NKRUMAH L.L.P.
116 W. 111th Street
New York, New York 10026
 (877) 316-9241 (office)
(212) 222-2680 (fax)

kankrumahesq@aol.com