UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

MIGUEL STRONG,

                Defendant.

11 Cr. 1032-31 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Miguel Strong seeking his release from United States Penitentiary Canaan ("USP Canaan") under 18 U.S.C. § 3582(c)(1)(A)(i), in light of his recent diagnosis of COVID-19 and attendant risks to his health. Dkt. 2541 ("Def. Mot."); Dkt. 2549 ("Def. Mem."); Dkt. 2563 ("Def. Reply"). The Government opposes this request. Dkt. 2562 ("Gov't Mem."). For the following reasons, the Court denies this application.

Strong was a member of the Bad Boys, a sect of the Bronx Trinitarios Gang ("BTG"), from the mid-2000s until his arrest in 2011. Gov't Mem. at 1. He participated in several violent acts, including the felony murder of David Avila-Gomez. Id. at 1–2; Dkt. 1650 ("PSR") ¶¶ 77–78. On September 4, 2009, Strong and four other BTG members set out to Yonkers to commit a robbery. Dkt. 1664 ("Sent. Tr.") at 40. Strong was the driver. Id. After they spotted Avila-Gomez holding a cell phone, Strong's four co-conspirators approached him. Id. at 41. One co-defendant, Jose Marmolejos, cocked a gun, pointed it at Avila-Gomez's head, and demanded his phone. PSR ¶ 76. When Avila-Gomez refused and tried to run into his house, Marmolejos shot him three times. Id. Although Strong had stayed behind near the car while the shooting took place, he then drove the group away, leaving Avila-Gomez to die. Id. Immediately after the

shooting, Strong drove the group to another town to find and rob a rival gang member who owed them money. *Id.* After failing to find him, they instead burglarized several cars. *Id.*

On August 13, 2014, Strong pled guilty to participating in a racketeering conspiracy, in violation of 18 U.S.C. § 1962. *See* Dkt. 1328 ("Plea Tr.") at 11; Gov't Mem. at 1. On February 25, 2015, the Court sentenced Strong to 192 months' (16 years') imprisonment—a sentence below the Guidelines range of between 210 and 262 months' imprisonment—to be followed by three years of supervised release. Sent. Tr. at 39, 50–51. Strong has been incarcerated since his arrest in December 2011. *Id.* at 20. He has thus served slightly more than half—108 months, or nine years—of his stated prison term, and is scheduled for release on October 6, 2025, in almost five years. Def. Reply at 8 & n.1; *id.*, Ex. 1.

On November 19, 2020, the Court received a *pro se* motion from Strong seeking early release because of the COVID-19 pandemic. Def. Mot. On December 11, 2020, Strong's appointed counsel filed a memorandum in support of his motion. Def. Mem. Counsel argues that compassionate release is warranted in light of the current pandemic and Strong's health conditions that subject him to heightened risks from COVID-19; Strong's unexpectedly harsh conditions of confinement, including his contracting COVID-19 in prison; Strong's intellectual disability; and Strong's desire to care for his mother and child. *Id.* at 1–2. On December 23, 2020, the Government opposed Strong's motion. It concedes that Strong's obesity and COVID-19 diagnosis present extraordinary and compelling circumstances justifying release. Gov't Mem. at 3–4. But it opposes compassionate release as inconsistent with the factors set forth in 18 U.S.C. § 3553(a). *Id.* at 4–6. On December 30, 2020, Strong's counsel filed a reply, arguing mainly that the § 3553(a) factors favor Strong's release at this point in his sentence. On January 5, 2021, Strong's counsel filed a further update on Strong's medical condition. Dkt. 2564 ("Def. Ltr.").

2

Under 18 U.S.C. § 3582(c)(1)(A), a court

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the Bureau of Prisons ("BOP") to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). But with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release from federal courts. *Ebbers*, 432 F. Supp. 3d at 422–23.

Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance, *inter alia*, (1) sets out circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons." *Id.* § 1B1.13. And the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own, without the intervention of the BOP. Accordingly, although courts—including this one—had treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons or by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

The Government does not dispute that Strong's obesity and COVID-19 diagnosis present extraordinary and compelling reasons under § 3582(c). The Court agrees with that assessment. The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It

4

presents a clear and present danger to free society for reasons that need no elaboration. The crowded nature of federal prisons in particular presents an outsized risk that the COVID-19 contagion, once it gains entry, will spread.[1] In that respect, COVID-19 poses a heightened health risk to all inmates. And a high-risk inmate like Strong, who contracted the virus while in prison, will face challenges in caring for himself. The Court regrets the meager treatment that Strong claims to have received, and that he continues to suffer from the effects of the virus. *See* Dkt. 2564 ("Def. Ltr."). Beyond the risks to health, the pandemic has also subjected all inmates, but especially those who contract the virus, to far more restrictive conditions of confinement, and has prompted limits on access to visitors, including family, far beyond what could have been expected at sentencing. For these reasons, in the past months, various courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[2] and the compassionate release of high-risk inmates serving federal sentences.[3]

---

[1] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[2] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, under 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449 (S.D.N.Y. 2020) (granting bond pending sentencing, under 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, under § 3145(c), to defendant who had pleaded guilty to a narcotics offense).

[3] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heighted vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy);

5

The presence of extraordinary and compelling reasons for early release, however, is only a threshold prerequisite for granting such release. The Court must also assure itself that release accords with "the factors set forth in section 3553(a) to the extent that they are applicable" before doing so. 18 U.S.C. § 3852(c)(1)(A). And here, the Court finds that the § 3553(a) factors, viewed collectively, decisively oppose expediting Strong's release from USP Canaan by nearly five years, as he requests. To be sure, some of those factors—including "the history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care"—favor release at this stage more than they did at the time of sentencing, especially given Strong's COVID-19 diagnosis, the continuing effects thereof, and the potential that he could contract it again. 18 U.S.C. § 3553(a)(1), (a)(2)(D). But all of the other § 3553(a) factors— especially the needs "for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[;] . . . to afford adequate deterrence to criminal conduct[;] . . . to protect the public from further crimes of the defendant"; and to effect specific deterrence, 18 U.S.C. § 3553(a)(2)—continue forcefully to favor the long sentence that the Court found necessary six years ago.

The felony murder for which Strong was convicted was, as the Court described it at his sentencing, "a shocking and terrible event." Sent. Tr. at 42. As the Court recounted then, in an

---

*United States v. Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 20) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

assessment that it incorporates by reference here, "[a]n innocent man died, and his family will suffer forever because" Strong and his co-conspirators wanted his cell phone. *Id.* Strong's actions in facilitating that murder were not impulsive, but planned in advance, and aimed at furthering the goals of the violent BTG street gang, even if through securing a trifling pecuniary gain. *Id.* at 41–42. Although Strong did not set out that night intending to kill Avila-Gomez or anyone else,[4] he did intend to facilitate an armed robbery, which "carr[ies] with [it] the risk of murder breaking out." *Id.* at 42. Nor did Strong do anything to prevent or avert Avila-Gomez's murder after the gun was drawn. Troublingly, after leaving Avila-Gomez to die on the sidewalk from his bullet wounds, Strong's group immediately proceeded to another town to rob another individual and, when unsuccessful, went on to burglarize several cars. *Id.* Nor were these the only acts of violence in which Strong personally engaged. In 2006, Strong and two other BTG members chased members of a rival gang for several blocks in the Bronx before assaulting them. *Id.* at 43. Strong's co-defendants there were armed with a cane and a machete; Strong wielded a golf club. *Id.* Also in 2006, Strong participated in another violent encounter between the BTGs and another gang, in which several individuals were beaten and stabbed. *Id.* These acts, taken together, gave the Court "grave concern that [Strong is] drawn to such violence." *Id.* at 46.

Accordingly, at sentencing the Court rejected, as inconsistent with the § 3553(a) factors, the defense's request for a 120-month term of imprisonment—a full year longer than the term Strong will have served if he were to be released today. *Id.* at 49 ("I cannot agree with that at all. The conduct here, particularly the participation in the Avila-Gomez robbery and ultimately

---

[4] The Court's finding that Strong "did not plan to kill anyone" was the basis for a three-level downward departure at sentencing, reducing Strong's recommended Guidelines range from between 292 and 365 months' imprisonment to between 210 and 262 months' imprisonment. *See* Sent. Tr. at 41.

felony murder, and also the two other assaults are simply too wrongful to justify a sentence of that length."). That assessment remains apt. Strong has served just over half of the below-Guidelines sentence the Court earlier found the § 3553(a) factors to require. The COVID-19 pandemic, including its regrettable effects on Strong's health and the conditions of his incarceration, does not render a 108-month sentence, as Strong requests, a just and reasonable one in light of the gravity of his offense, the need for just punishment, the need to deter Strong and others from similar violence, and the need to protect the public from similar acts.

Nor do Strong's other arguments on this point support such a reduced sentence. Strong cites his intellectual disability, his relative youth, and his traumatic childhood as mitigating factors. Def. Mem. at 33–37. But the Court considered those factors at length at sentencing, and relied on them in imposing the below-Guidelines 192-month sentence Strong is now serving. Sent. Tr. at 11, 23–29, 47–49. Strong also argues that his educational progress in prison reflects rehabilitation that supports his early release. Def. Mem. at 34–35; Def. Reply at 9. The Court commends Strong for productively using his time in prison. But that circumstance, which is not unusual, does not support reducing his sentence by nearly five years. And, as the Government points out, Strong's disciplinary history while at USP Canaan—involving two sanctions for possessing a weapon—undermines the Court's confidence as to his asserted rehabilitation. Gov't Mem. at 4–5.[5] Nor does Strong's admirable desire to take care of his family, even in light of his mother's significant needs, support a reduction in sentence on the order of magnitude now sought. *See* Def. Mem. at 36–37; Def. Reply at 10. And the generalized interest in reducing prison populations because of COVID-19, *see* Def. Mem. at 39–40; Def. Reply at 16–17, does

---

[5] Strong notes that his possession of illicit weapons in prison resulted from the need for self-defense at USP Canaan. Def. Reply at 10–11. Whatever his motivation, these incidents suggest at least a willingness to violate prison rules and, if perceived as necessary, engage in violence.

8

not meaningfully affect the individualized determination, under § 3553(a), of the just and reasonable sentence for the crime of which Strong has been convicted.

Last, Strong contends that his early release is required by the need to avoid sentencing disparities "among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see* Def. Mem. at 37–39; Def. Reply at 14–15. But the Court has denied compassionate release applications by many defendants who had served similar proportions of their prison terms, even when a defendant had a health condition indicative of heightened vulnerability to COVID-19 or had contracted the virus. *See, e.g.*, *United States v. Fiseku*, No. 15 Cr. 384 (PAE), Dkt. 130 (S.D.N.Y. Dec. 28, 2020) (denying compassionate release for 49-year-old obese defendant who had served 70% of 84-month sentence for conspiracy to commit Hobbs Act robbery); *United States v. Ortiz*, No. 16 Cr. 439 (PAE), Dkt. 84 at 2, 6–7 (S.D.N.Y. July 6, 2020) (similar); *United States v. Leon*, No. 15 Cr. 877 (PAE), Dkt. 320 at 5–7 (S.D.N.Y. June 11, 2020) (same for defendant with asthma who had served 60% of stated sentence of 84 months' imprisonment); *United States v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *1 (S.D.N.Y. May 14, 2020) (same for a defendant without heightened risk of contracting COVID-19 who had served "approximately 54 months of his significantly below-guidelines sentence of 78 months' incarceration"); *see also United States v. Butler*, No. 18 Cr. 834 (PAE), Dkt. 574 at 1–2 (S.D.N.Y. Nov. 9, 2020) (same for defendant who contracted COVID-19 but had served less than half of his stated sentence).

And Strong's circumstances diverge from the substantial number of defendants whose compassionate release, as Strong notes, the Court *has* granted in recent months. Many of those defendants were of much more advanced age or had much more severe medical conditions, such that continued incarceration through the pandemic posed "too great a risk" of "function[ing] as a

death sentence." *Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (ordering compassionate release of elderly defendant who had served over half his sentence and suffered from, *inter alia*, HIV, cancer, and chronic obstructive pulmonary disease); *Brown*, 18 Cr. 390 (PAE), Dkt. 472 at 4 (S.D.N.Y. June 17, 2020) (same for elderly defendant with host of medical conditions including HIV, Hepatitis C, hypertension, and partial paralysis from a past stroke); *Davies*, 15 Cr. 445 (PAE), Dkt. 479 at 4 (S.D.N.Y. June 26, 2020) (same for elderly defendant with high blood pressure, obesity, and hypertension). Others had served a much greater proportion of their sentences. *See, e.g.*, *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2523 at 2 (S.D.N.Y. Oct. 9, 2020) (granting compassionate release for a defendant who had served nearly 93 months of his 121-month sentence, and was expected to be released to a halfway house in five months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for defendant with asthma and who had served nine years of his 10-year sentence); *Hernandez*, 451 F. Supp. 3d at 305 (same for defendant who had served 17 months of a 24-month stated sentence and was scheduled for release in four months).[6]

Accordingly, even given the extraordinary and compelling circumstances presented by the COVID-19 pandemic—and especially the particularly severe and unexpected hardship it has occasioned for Strong—the § 3553(a) factors are not compatible with the reduction of sentence sought. The Court therefore denies Strong's motion for compassionate release or reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

The Court wishes Strong a full and speedy recovery.

---

[6] The Court also finds unpersuasive counsel's comparison of Strong's case to those of Paul Manafort and Michael Cohen, *see* Def. Mem. at 37–38; they are not "defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Nor does the Court find recent presidential pardons to be relevant to the instant § 3553(a) analysis. *See* Def. Reply at 15–16.

SO ORDERED.

                                                                                 _____
                                                                                        PAUL A. ENGELMAYER
                                                                                        United States District Judge

Dated: January 7, 2021
           New York, New York